# NOT DESIGNATED FOR PUBLICATION

## STATE OF LOUISIANA

## COURT OF APPEAL

## FIRST CIRCUIT

## NO. 2022 CJ 0947

## STATE OF LOUISIANA IN THE INTEREST OF [K.G., T.G., AND M.G.][1]

*Mut*

*Judgment Rendered:* **FEB 0 2 2023**

\* \* \* \* \* \* \* \*

Appealed from
The Juvenile Court
In and for the Parish of East Baton Rouge
State of Louisiana
Case No. JU116127

The Honorable Gail Grover, Judge Presiding

\* \* \* \* \* \* \* \*

| | |
|---|---|
| Hillar C. Moore, III<br>District Attorney<br>Courtney E. Myers<br>Assistant District Attorney<br>Baton Rouge, Louisiana | Counsel for Appellant<br>State of Louisiana |
| Courtney D. Skidmore<br>Baton Rouge, Louisiana | Counsel for Appellants<br>K.G., T.G., and M.G. |
| Teosha Patricia Jones<br>Baton Rouge, Louisiana | |
| Raveen Hills<br>Baton Rouge, Louisiana | |
| Annette Fuller Roach<br>Lake Charles, Louisiana | Counsel for Appellant<br>P.G. |
| Daarina Phillips<br>Baton Rouge, Louisiana | |

---

[1] The initials of the children are used in order to keep their identities confidential pursuant to Uniform Rules of Louisiana Courts of Appeal, Rule 5-2.

Hester, J. dissents

Chutz, J. concurs with reasons by Mut

Jeremy Woolard
Baton Rouge, Louisiana

Counsel for Appellant
Department of Children & Family
Services

Ryan Taylor Dahlquist
Lafayette, Louisiana

Counsel for Appellee
C.R.

\* \* \* \* \* \* \* \*

BEFORE:  THERIOT, CHUTZ, AND HESTER, JJ.

**THERIOT, J.**

The State of Louisiana ("State") and P.G., the biological father, appeal a decision by the Juvenile Court of East Baton Rouge Parish wherein the trial court returned custody of K.G., T.G., and M.G. to C.R., their biological mother. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

On September 25, 2021, the Department of Children and Family Services ("DCFS") conducted an investigation involving K.G., T.G., M.G., and E.G. concerning allegations of neglect and lack of adequate supervision. P.G. is the biological father of K.G., T.G., M.G., and E.G. L.C. is the biological mother of E.G., and C.R. is the biological mother of K.G., T.G., and M.G.

The DCFS investigation was based on the findings of the Federal Bureau of Investigations ("FBI") and the Baton Rouge Police Department ("BRPD"). The FBI assisted BRPD in conducting Forensic Interviews with three of the children regarding a report of a missing two-year-old child. During the investigation, it was learned that L.C. became angry at the two-year-old child and punched the child in the stomach causing her to fall and hit her head. The child laid down and was later found unresponsive by P.G. P.G. admitted to disposing of the child's remains in Mississippi. On September 26, 2021, P.G. was arrested for Unlawful Disposal of Remains, Obstruction of Justice, and Second Degree Murder, and on September 30, 2021, L.C. was arrested for Second Degree Murder.

During its investigation, DCFS learned that C.R. abandoned her children about three years prior and her whereabouts were unknown. Because the father, P.G., was arrested for Unlawful Disposal of Remains, Obstruction of Justice, and Second Degree Murder, and because the mother, C.R., abandoned the children and her whereabouts were unknown, DCFS obtained an Instanter Order to have the children placed in the custody of the State.

3

The Juvenile Court held a continued custody hearing on September 30, 2021 to determine if K.G., T.G., and M.G. were children in need of care and if continued custody was necessary as to their biological mother, C.R. C.R. was present in court. At the continued custody hearing, there was a stipulation between the parties that K.G., T.G., and M.G. were children in need of care due to dependency, and the Court found that continued custody was necessary for their safety and protection. It was learned at the continued custody hearing that C.R. was possibly a member of an Indian Tribe and that the children could be eligible members.

On October 5, 2021, the Juvenile Court held a continued custody hearing to determine if K.G., T.G., and M.G. were children in need of care and if continued custody was necessary as to their biological father, P.G. P.G. was present in court. At that continued custody hearing, there was a stipulation between the parties that K.G., T.G., and M.G. were children in need of care due to dependency and continued custody was necessary for their safety and protection. The Court assigned an appearance hearing for November 2, 2021. On November 2, 2021, the Court informed the parties that the Indian Tribe had been notified.

On October 28, 2021, the State filed a Child in Need of Care petition pursuant to Louisiana Children's Code articles 631 through 645 alleging that K.G., T.G., and M.G. were children in need of care due to C.R.'s neglect and her prolonged absence, which placed the children at substantial risk of imminent harm. As to P.G., the State alleged that due to his abuse K.G., T.G., and M.G. were children in need of care.

On February 8, 2022, an adjudication hearing was held in the matter regarding P.G. Through his counsel of record, P.G. stipulated without admitting the facts that K.G., T.G., and M.G. were children in need of care. On May 10, 2022, an adjudication hearing was held in the matter regarding C.R. C.R. was present at the hearing via Zoom from Oklahoma. The Juvenile Court found the

4

children were in need of care. The disposition hearing was subsequently held on August 2, 2022. At the disposition hearing, after receiving evidence and testimony, the Juvenile Court found that custody of the minor children, K.G., T.G., and M.G., should be returned to their biological mother, C.R. The Juvenile Court then suspended the effect of the judgment from September 2, 2022 to September 27, 2022. It is from this judgment that the State and P.G. appeal.

## ASSIGNMENT OF ERROR

The State and P.G. contend that the Juvenile Court erred in returning custody of the minor children, K.G., T.G., and M.G., to their biological mother, C.R., because of evidence showing that C.R. could not care for the children.

## STANDARD OF REVIEW

In cases involving the custody of children, the trial court is vested with a vast amount of discretion. *State in Interest of A.S.*, 2019-0248 (La.App. 1 Cir. 9/4/19), 285 So.3d 1129, 1140. It is well settled that an appellate court cannot set aside a juvenile court's findings of fact in the absence of manifest error or in the clearest case of abuse of the trial court's great discretion. *Id.* The two-part manifest error test considers: 1) whether there is a reasonable factual basis in the record for the finding of the trial court; and 2) whether the record further establishes that the finding is not manifestly erroneous. *Mart v. Hill*, 505 So. 2d 1120, 1127 (La. 1987). If a reasonable factual basis exists, an appellate court may set aside a trial court's factual finding only if, after reviewing the record in its entirety, it determines the trial court's finding was clearly wrong. *Lewis v. Fowler*, 2018-0365 (La.App. 1 Cir. 9/24/18), 259 So.3d 364, 367. Moreover, where factual findings are based on determinations regarding the credibility of witnesses, the trier of fact's findings demand great deference and are virtually never manifestly erroneous or clearly wrong. *Id.*

5

## DISCUSSION

Under Louisiana Children's Code article 678, prior to entering a judgment of disposition, the court shall conduct a disposition hearing. All parties have the right to testify, the right to confront and cross-examine adverse witnesses, the right to present evidence and witnesses, and the right to counsel. La. Ch.C. art. 680(A). The court shall consider the report of the predisposition investigation, the case plan, any reports of mental evaluation, and all other evidence offered by the parties relating to the proper disposition. The court may consider evidence which would not be admissible at the adjudication hearing. La. Ch.C. art. 680(B).

In a case in which a child has been adjudicated to be in need of care, the health, welfare, and safety of the child shall be the paramount concern. If the child can safely remain in or return to the custody of the parent, the court shall place the child in the custody of the parent under terms and conditions deemed to be in the best interest of the child. If the child cannot safely remain in or return to the custody of the parent, the court may 1) order the child into the legal custody of a suitable relative or other suitable individual on terms and conditions deemed to be in the best interest of the child; 2) place the child in the custody of a private or public institution or agency; 3) commit a child found to have a mental illness to a public or private institution for persons with mental illness; 4) grant guardianship of the child to a nonparent; or 5) make such other disposition or combination of the above dispositions as the court deems to be in the best interest of the child. La. Ch.C. art. 681(A).

The court shall impose the least restrictive disposition of the alternatives enumerated in Article 681 that the court finds is consistent with the circumstances of the case and the health, welfare, and safety of the child. If the court determines that the child cannot safely remain in or return to the custody of the parent, the court shall place the child in the custody of a suitable relative unless the court has

6

made a specific finding that the placement is not in the best interest of the child. The court shall give specific written reasons for its findings, which shall be made a part of the record of the proceeding. La. Ch.C. art. 683.

If the child is an Indian child as defined by Louisiana Children's Code article 116, the federal Indian Child Welfare Act (ICWA) applies in all subsequent proceedings.[2] For example, the court will be required to ensure that proper notice is given, that active efforts to prevent removal are made, that qualified expert witnesses on the culture and customs of Indian tribes are appointed, and that the ICWA standards of evidence are followed in accordance with the strict provisions of the Act. La. Ch.C. art. 680, Comments-2018. Under Louisiana Children's Code and the ICWA, "Indian child" means any unmarried child under eighteen years of age who is a member of an Indian tribe or who is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe. La. Ch.C. art. 116(6.1); 25 U.S.C.A. § 1903(4). The minor children in this case, K.G., T.G., and M.G., are under eighteen years of age, are not married, and are members of the Seminole Nation of Oklahoma, so the ICWA applies.[3]

Pursuant to Louisiana Children's Code article 103.1(A), the provisions of the ICWA and the regulations promulgated thereunder supersede the Children's Code whenever the outcome of an involuntary or voluntary proceeding may result in the removal of an Indian child from a parent under circumstances in which the parent cannot have the child returned upon demand. Further, child custody proceedings to which the ICWA and the regulations promulgated thereunder apply

___

[2] Pursuant to 25 U.S.C.A. § 1902, the purpose of the ICWA is

> to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs.

[3] K.G. and T.G. became members of the Seminole Nation of Oklahoma on May 16, 2022, and M.G. became a member of the Seminole Nation of Oklahoma on May 26, 2022.

7

include a child in need of care proceeding; a certification for adoption proceeding; a family in need of services proceeding; and a transfer of custody, a surrender for adoption, and any other voluntary proceeding. La. Ch.C. art. 103.1(B). Further, 25 C.F.R. § 23.103, provides that

> (a) ICWA includes requirements that apply whenever an Indian child is the subject of:
>
> (1) A child-custody proceeding, including:
>
> (i) An involuntary proceeding;
>
> (ii) A voluntary proceeding that could prohibit the parent or Indian custodian from regaining custody of the child upon demand; and
>
> (iii) A proceeding involving status offenses if any part of the proceeding results in the need for out-of-home placement of the child, including a foster-care, preadoptive, or adoptive placement, or termination of parental rights.
>
> (2) An emergency proceeding.
>
> . . .
>
> (c) If a proceeding listed in paragraph (a) of this section concerns a child who meets the statutory definition of "Indian child," then ICWA will apply to that proceeding. In determining whether ICWA applies to a proceeding, the State court may not consider factors such as the participation of the parents or the Indian child in Tribal cultural, social, religious, or political activities, the relationship between the Indian child and his or her parents, whether the parent ever had custody of the child, or the Indian child's blood quantum.

Under the ICWA, the court must not order a foster-care placement of an Indian child unless clear and convincing evidence is presented, including the testimony of one or more qualified expert witnesses, demonstrating that the child's continued custody by the child's parent or Indian custodian is likely to result in serious emotional or physical damage to the child. For a foster-care placement the evidence must show a causal relationship between the particular conditions in the home and the likelihood that continued custody of the child will result in serious emotional or physical damage to the particular child who is the subject of the child-custody proceeding. Without a causal relationship, evidence that shows only

the existence of community or family poverty, isolation, single parenthood, custodian age, crowded or inadequate housing, substance abuse, or nonconforming social behavior does not by itself constitute clear and convincing evidence that continued custody is likely to result in serious emotional or physical damage to the child. 25 C.F.R. § 23.121.

At the disposition hearing, the Juvenile Court heard the testimony of Richard England, Delores Converse, and C.R. Richard England testified as an Indian Child Welfare Expert Witness designated by the Tribal Council of the Seminole Nation as the tribe's qualified expert witness. Mr. England testified that he spoke with DCFS, the attorneys, the biological mother, the Seminole Nation, and the children's paternal aunt before the hearing. However, he indicated that the children's paternal grandmother was not available to speak with him. During his testimony, Mr. England stated that the biological mother initially left the children due to domestic violence. Mr. England was of the opinion that the children would suffer emotional or physical damage if placed in the home of either parent since the biological father is incarcerated and the biological mother left the children three or four years prior. He further stated that, due to the trauma, the chaos, and the circumstances that the children have been subjected to, the tribe is of the opinion that the children should remain in the custody of DCFS and placed in the grandmother's home with reunification services in place for the mother. Mr. England indicated that it was his opinion that there was immediate danger, whether it was psychological, emotional, or physical, for the children to be removed.

The next witness to testify at the disposition hearing was Delores Converse, the child welfare specialist. During Ms. Converse's testimony, four exhibits were filed into evidence including a Court Report from DCFS dated March 15, 2022, a June 20, 2022 letter by Delores Converse, a July 27, 2022 letter by Delores Converse, and the Case Plan dated February 25, 2022. The Court Report indicates

that the biological mother returned to be with the children on October 17, 2021 and left on December 2, 2021 due to a dispute with the paternal grandmother. Ms. Converse testified that the biological mother could not provide Ms. Converse with an address of where she was living and would not answer the telephone when Ms. Converse called her. Ms. Converse further stated that the children wanted to speak to their biological mother, but she did not call the children. At the time of the hearing, the children were four years old, ten years old, and eleven years old and expressed to Ms. Converse that they wanted to live with their paternal grandmother. Further, the June 20, 2022 letter by Delores Converse indicates that the biological mother did not have any plans to return to live or visit the children and that DCFS recommends that the children remain in DCFS's custody.

Lastly, the biological mother, C.R., testified at the hearing. When asked about whether her housing was adequate for the children, C.R. indicated that she lives with her mother, her stepfather, her cousin, and her cousin's children in Oklahoma. She stated that she has lived at her mother's home since she has been in Oklahoma. C.R. testified that her mother's house has four bedrooms, with two of the bedrooms being for C.R. and her three children if C.R. gets custody of the children. Regarding her employment, C.R. stated that she takes care of her mother, and C.R.'s stepfather supports her financially. C.R. further stated that she will provide for the children financially by relying on her family members. Her support system includes her stepfather, brothers, sisters-in-law, uncles, and aunts. C.R. specified that she has not attended parenting classes or anger management classes. During her testimony, C.R. indicated that she visited the children once a year after she initially left and now was able to speak with the children about once a week via telephone. C.R. stated that she has a misdemeanor marijuana conviction, she may go live with her siblings in order to find a job if needed, and her family will provide for her children if she is awarded custody.

At the conclusion of the disposition hearing, the Juvenile Court found that the children should be returned to the custody of C.R. In finding that the children should be returned to C.R., the Juvenile Court stated that there was no evidence presented to show that the biological mother is unfit; no evidence presented to show that the biological mother's lack of employment or her own housing will cause damage to the children; and no evidence presented regarding whether the biological mother had substance abuse issues. Further, the Juvenile Court noted that the biological mother initially left the children due to domestic violence issues between the biological mother and P.G. The Juvenile Court held that there was not clear and convincing evidence presented demonstrating that placing the children in the biological mother's custody is likely to result in serious emotional or physical damage to the children. In so concluding, the Juvenile Court placed great weight on the mother's testimony. We cannot find that the Juvenile Court abused its discretion in finding that the State did not meet its burden under the ICWA or its burden under the Louisiana Children's Code due to the lack of evidence presented at the disposition hearing. The Juvenile Court's findings based on determinations regarding the credibility of witnesses are entitled to great deference, and we do not find that the Juvenile Court's findings are manifestly erroneous. See Lewis, 259 So.3d at 367.

## DECREE

The decision by the Juvenile Court of East Baton Rouge Parish wherein the trial court returned custody of K.G., T.G., M.G. to their biological mother is affirmed. The stay is lifted and the matter is remanded to the Juvenile Court for further proceedings consistent with this opinion. All costs of this appeal in the amount of $1,462.00 are assessed to The State of Louisiana.

**AFFIRMED.**

STATE OF LOUISIANA

IN THE INTEREST OF

K.G., T.G., AND M.G.

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2022 CJ 0947



CHUTZ, J., concurring.

In light of the trial court's factual findings as well as the heightened evidentiary standard and the restrictions of the Indian Child Welfare Act insofar as evidence of poverty, isolation, single parenthood, inadequate housing, substance abuse, and nonconforming social behavior being insufficient alone to clearly and convincingly establish the requisite causal relationship between the particular conditions in the mother's home and the likelihood that custody with their mother would result in serious emotional or physical harm to the children, we are constrained to affirm the trial court's conclusion. Accordingly, I concur.